THE ADAMS EXPRESS COMPANY

*v.*

ADOLPH BOSKOWITZ *et al.*

*Filed at Ottawa November 20, 1883.*

1. EVIDENCE—*party's statements not evidence in his own favor.* In an action to recover for a loss of goods against an express company, where the defence was a fraudulent concealment of the value of the several packages, the plaintiffs' clerk, who filled up the receipt the company signed, on cross-examination testified, that until about a year prior to the date of the shipment the plaintiffs had put a valuation on goods, and paid an extra charge thereon, and that he struck out of the receipt the words "valued at," etc. The plaintiffs' counsel then asked the witness, "Why?" and he answered, because he was told by one of the plaintiffs not to give a valuation, and that plaintiff told him he had an understanding with the express companies and with the agent of the defendant company that he was to pay no more valuation charges: *Held*, that such declarations of one of the plaintiffs were clearly inadmissible, not having been made in the presence of the defendant, or constituting any part of the *res gestæ.*

2. SAME—*to contradict statement of a witness.* In a suit against an express company to recover for the loss of three bales of furs shipped, the defendant's receipt therefor, when produced in evidence, had a memorandum thereon in a corner, showing the weight of each bale, and that two were mink and one skunk furs. The plaintiffs' clerk testified that this was put upon the receipt before it was sent to the express office for signature, and, on cross-examination, that the weights of such packages were kept in the receipt book, and that such weights were "most always" put in the receipt books. The agent of the express company who signed the receipt, testified that to the

best of his knowledge that memorandum was not on that receipt when he signed it. He was then asked whether or not it was customary for the plaintiffs, according to his observation, to put their weights on their receipts. On objection the court disallowed the question. The witness had been in the service of the defendant for many years: *Held*, that the question should have been allowed, as competent to contradict the testimony of the plaintiffs' clerk.

3. CONTRACT—*of the parties, in express receipt of goods shipped.* A party, in forwarding goods by express, took a blank receipt of the United States Express Company, and wrote the word "Adams" over the words "United States," and inserted therein a description of the goods, leaving an exemption clause unchanged, so that it read, "the said United States Express Company are not to be held liable," etc., which receipt was signed by the agent of the Adams Express Company, and delivered to the shipper: *Held*, that the United States Express Company was in no sense a party to the contract or receipt, and that in a suit against the Adams Express Company an instruction stating that the receipt contained on its face no agreement for an exemption from liability between the plaintiffs and defendant, and assuming that the exemption in the receipt was contained in the "contract with the United States Express Company," was palpably misleading, and unwarranted.

4. SAME—*when ambiguity may be explained.* A blank receipt of the United States Express Company for goods to be forwarded, was changed by erasing the words "United States," and inserting over the same the word "Adams," and signed by the agent of the Adams Express Company, which company received the goods described in the receipt, but the clause in the receipt as to the limitation of the company's liability was left unchanged, so that it read, "the *United States* Express Company are not to be held liable," etc.: *Held*, that the law, in the absence of proof *dehors* the receipt, would not determine whether such limitation clause related to the Adams or the United States Express Company, and that the true intent of the parties giving or receiving such receipt must be determined from circumstances to be proved.

5. CARRIER—*fraud in concealing value of packages forwarded.* In an action against an express company to recover for the loss of three packages of furs, in which a fraudulent concealment of the value of the packages was relied on in defence, the court, in substance, instructed the jury, that although the clause in the receipt exempting the company from any greater liability than $50 for a package unless its value was truly given, may have been known to the plaintiffs, and that it was intended to apply to the packages shipped, and although the plaintiffs accepted the receipt with all this knowledge, and without objection thereto, and although the plaintiffs had agreed to pay a valuation charge on the character of goods embraced in the shipment, and omitted to state a valuation, all this would not be a fraud, and in the absence of fraud such omission would constitute no defence: *Held*, the instruction should not have been given.

APPEAL from the Appellate Court for the First District;—heard in that court on appeal from the Superior Court of Cook county; the Hon. JOSEPH E. GARY, Judge, presiding.

Appellees were dealers in furs. They had a business house in New York City and one in Chicago, and were in the habit of shipping furs by express from Chicago to New York. There were in Chicago three express companies,—the United States, the American, and the Adams,—each of which, as a common carrier, was in the habit of carrying furs from Chicago to New York, and appellees shipped furs by each of these lines. The regular rates of charges by each of these companies for carrying furs from Chicago to New York was, for coarse furs three dollars per hundred pounds, and for fine furs three dollars per hundred pounds, and one-quarter of one per cent upon the *value* of the fine furs. It was the habit of appellees, when a shipment was made by either of these companies, to put up their packages at their store, and having marked the same properly, to fill up a receipt to be signed by the express company on the receipt of the goods, and returned, when so signed, to the shippers.

Appellees, in March, 1872, had in their possession and use books of printed blank forms for express receipts. Some of them contained blanks of the usual form of receipts given to shippers by the United States Express Company, and some of which contained like blanks of receipts usually given by the American Express Company. They do not seem to have had any such blanks running in the name of the Adams Express Company. These forms seem to have been used indiscriminately, whether the shipment was made by the United States Express, the American, or the Adams,—that is, in shipping by the United States Express the shipping clerk of appellees often used the form printed for the American, by simply writing the words "United States" over the word "American," at the head of the receipt; and in ship-

ping by the American Express Company he often used a blank prepared for the United States Express Company, simply writing over the printed words "United States," at the head of the receipt, the word "American;" and in shipping by the Adams Express Company, appellees' clerk used either a blank printed for use with the United States, or a blank printed for use with the American, by simply writing the word "Adams" over the words "United States," or the word "American," at the head of the receipt, according to which form happened to be at hand.    These receipts were not usually cut or torn from the book, when used, but were filled up by appellees in the book, and signed by the agent of the express company in the book, and the book containing the receipts which had been signed, and also blanks for further use, was returned to and kept by appellees.    This, by the testimony of appellees' witnesses, was the usual course of the business.

On March 20, 1872, appellees sent from their house in Chicago three packages of furs to the Adams Express Company, to be shipped to New York City, and sent with them the receipt book containing receipts and blanks for receipts in forms printed for use with the United States Express Company, and in that book a receipt for these three packages, filled up in the name of the Adams Express Company.    The goods were received by the Adams Express Company, and the receipt, as filled up by appellees, was signed in the book by Peterson, the shipping clerk of that company, and the book was returned to the appellees.    The body of that receipt, so far as is material to this case, was as follows,—the words italicized were in writing, and the other words in print:

"*ADAMS* EXPRESS COMPANY,
CHICAGO, *March 20,* 1872.

"Received of *J. & A. Boskowitz three (3) bales,* said to contain *Peltries,* valued at ——— dollars, and marked *J. & A. Boskowitz, No. 38 Mercer street, New York,* which we under-

take to forward to the nearest point of destination reached by this company only, perils of navigation excepted. And it is hereby expressly agreed that the said United States Express Company are not to be held liable for any loss or damage except as forwarders only, nor for any loss or damage of any box, package or thing for over $50, unless the just and true value thereof is herein stated; nor for any loss or damage by fire.   *   *   *

  For the proprietors.    *Peterson*, Agent."

The three bales were placed in the express car, in a passenger train on the railroad, which left Chicago on the evening of that day for New York City. The next morning, before day, at a point near Fort Wayne, Indiana, the train was thrown from the track by reason of a broken rail, and the cars at once took fire, and all save one were burned. The express car containing these bales of peltries, with all its contents, was burned. This is an action of assumpsit brought by appellees, against appellant, to recover the value of these furs.

The action was begun in April, 1872. The appellant pleaded, denying its liability. On a trial in January, 1874, a verdict was rendered for the defendant, which, on motion, was set aside, and a new trial granted by the Superior Court of Cook county. The issues were again tried in November, 1874, when a verdict was again rendered for the defendant, and again that court granted to the plaintiffs a new trial. A third trial was had in May, 1875, in which a verdict for plaintiffs was rendered, and their damages fixed at $50, and judgment went for that amount. Plaintiffs appealed from that judgment to this court, and upon a hearing here that judgment was reversed. (The case is reported in 93 Ill. 523.) The cause was remanded, and in May, 1880, there was another trial, in which the jury failed to agree. In October, 1881, the issues were again tried, and a verdict rendered for plaintiffs, and damages assessed at $12,768. Appellant

moved for a new trial. Appellees thereupon entered a *remittitur* of $4651.32, and the court refused a new trial, and rendered judgment against appellant for $8117.45, and costs. This judgment, on appeal, was affirmed in the Appellate Court, and the case comes here on appeal from that judgment of the Appellate Court.

Messrs. WM. H. & J. H. MOORE, for the appellant:

Where the carrier seeks to be discharged from the duties which the law has annexed to his employment, a notice alone will not be effectual without the assent of the shipper to the attempted restriction; but it is otherwise in respect to those duties designed simply to insure good faith and fair dealing. A notice, alone, if brought home to the knowledge of the owner of the property delivered for carriage, will be sufficient. *Boskowitz et al.* v. *Adams Express Co.* 93 Ill. 523; *Western Transportation Co.* v. *Newhall et al.* 24 id. 463; *Oppenheimer* v. *United States Express Co.* 69 id. 66; *Erie Ry. Co.* v. *Wilcox*, 84 id. 239.

Plaintiffs' second instruction was erroneous, in assuming that the clause in the receipt limiting the carrier's liability was the contract of the United States Express Company. *Boskowitz* v. *United States Express Co.* 93 Ill. 523.

If there was an agreement to pay a valuation charge on the furs, and that the same was not paid, the plaintiffs practiced a fraud upon the defendant, and can not recover. Yet the jury are told that plaintiffs are entitled to recover for the value of the furs lost, even though plaintiffs were to have paid extra charges and did not, (which is a fraud,) unless "the jury believe, from the evidence, that the plaintiffs practiced a fraud upon or deceived the defendant as to the kind or quality of the furs." The words following the word "unless," contradict all that precedes that word.

An instruction contradictory in itself is so well calculated to mislead as not to be tolerated. *Thorp* v. *Goewey*, 85 Ill. 616.

It is not proper to inject into it an argument, as this seems to do. *Chapman* v. *Cawrey*, 50 Ill. 520; *Thompson* v. *Force*, 65 id. 372; *Chittenden* v. *Evans*, 48 id. 53; *Ludwig et al.* v. *Sager*, 84 id. 99; *Bradley* v. *Coolbaugh*, 91 id. 149; *McLean County Bank* v. *Mitchell*, 88 id. 55; *City of Freeport* v. *Isbell*, 83 id. 443; *Keeler* v. *Stuppe*, 86 id. 311.

Mr. EMERY A. STORRS, for the appellees:

Before a carrier can exempt himself from any common law liability annexed to its employment, the contract of exemption must be assented to by the shipper. It is equally clear that the burden of showing such exemption, and such assent thereto, rests upon the party affirming its existence.

If the shipper knows that the carrier requires of him disclosures of value, and proof of that knowledge is brought clearly home to him, the inference that he has assented to such a requirement may well be drawn from his silence.

The dealings of these parties for a year before this shipment was such as clearly to lead the plaintiffs to believe that the valuation clause in the receipt was not relied on.

The plaintiffs' fourth instruction is neither contradictory nor argumentative, but announces a correct principle of law applicable to the facts of the case.

Mr. JUSTICE DICKEY delivered the opinion of the Court:

On the trial of the issues in this cause the defendant relied upon a supposed contract on the part of plaintiffs, springing from the fact that plaintiffs had accepted a receipt, in which it was provided that in want of a statement of value in the receipt the liability of defendant should not exceed $50 for each bale or package, and upon circumstances and testimony tending to show that this provision in the receipt was known to, and assented to by, the plaintiffs. Defendant also relied upon the alleged fact that the valuation was omitted from the

receipt by plaintiffs for the fraudulent purpose of concealing the fact that part of the furs were fine furs, so that they might escape the payment of that part of the rates on fine furs depending upon the value. To meet these positions plaintiffs relied upon the alleged fact that they had made a special agreement with one Hopkins, the agent of defendant, that they might ship fine furs, as well as coarse, at the rate of three dollars per hundred pounds, without any additional charge on fine furs of a per cent upon their value. This allegation was stoutly denied by defendant. On it the testimony is contradictory. It was a vital and closely contested question. Its determination would, from its bearing upon the turning points of the case, necessarily be, and was, very important.

Upon this vital question, Nathan Weil, the agent of the plaintiffs who filled out the body of the receipt for the signature of the express company, as a witness, on cross-examination, having testified that he, in filling up the receipt, had erased from the printed blank the words "valued at," etc., in the receipt, and having testified that prior to March 20, 1872, plaintiffs had put a valuation on furs, and paid a charge thereon to the express company, but not for nearly a year before that date, plaintiffs' attorney asked the witness, against the objections of defendant, "Why?" and he answered, because he was "told by Mr. Boskowitz not to do it;" and, against like objection, testified Boskowitz told witness "he had an understanding with the express companies that we were to pay no valuation charges;  *  *  *  that such was his understanding with Mr. Hopkins," (the agent of defendant,) "that he was to pay no valuation,"—and to the ruling of the court in admitting proof of what Mr. Boskowitz had told witness, defendant excepted. This was clearly error. It is not perceived upon what ground the declarations of one of the plaintiffs, not made in the presence of defendant, or constituting any part of the *res gestæ*, could be allowed as

proof against defendant. This proof had an important bearing upon a closely contested question of fact in the case, and must have had much weight with the jury in determining in favor of plaintiffs the conflict between the testimony of one of the plaintiffs on the one hand, and that of Hopkins, Colvin, and others, on the other hand. This was a vital point in the controversy, and for this reason alone the judgment in this case must be reversed.

It is proper, however, to notice other rulings on this trial. On the upper left hand corner of the receipt given for these furs was a memorandum, when put in evidence by the plaintiffs, thus:

$$\frac{\begin{array}{l} 170 \\ 180 \end{array}}{\begin{array}{ll} 350 = 2 \text{ bales mink.} & \text{J. \& A. B.} \\ 185 = 1 \text{ skunk.} & \text{A. \& B.} \end{array}}$$

$$535$$

Weil, a witness for plaintiffs, had stated that this memorandum was put on this receipt before it was sent to the express office for signature. On cross-examination this witness had testified the weights of such packages were kept in the receipt book, and such weights were "most always" put on the receipt books. Peterson, who signed (for the company) the receipt given for these furs, testified for defendant that to the best of his knowledge that memorandum was not on that receipt when he signed it. He was asked whether or not it was customary for Boskowitz & Co., according to his observation, to put their weights on their receipts. The court ruled that he should not be allowed to answer this question, and defendant excepted. We think he ought to have been allowed to answer the question, as a contradiction of the witness Weil. This witness had been in the service of the defendant company for many years, and for a long time had been the receiving clerk of the company when these goods

were shipped. It was a question in dispute whether that memorandum was on the receipt when he signed it. Weil had sworn for plaintiffs that he "most always" put the weights on the receipt. It certainly was competent to contradict him in that regard, and to that end prove that such a thing was *not usual.*

The instructions given to the jury, as a whole, were misleading, and in some respects palpably erroneous. The second instruction, given at the request of plaintiffs, was palpably misleading, and unwarranted. It was misleading to say that the receipt contained on its face no agreement for an exemption from liability between plaintiffs and defendant, and it was misleading to assume that the exemption in the receipt was contained in a "contract with the United States Express Company." The only parties to the receipt are appellees and the Adams Express Company. The United States Express Company, on the face of the receipt, taking it ever so literally, in no manner appears as one of the contracting parties. If the word "said," in the receipt, immediately preceding the words "United States," were stricken out, that provision would, on its face, purport to be a contract between the Adams Express Company and appellees in relation to the liability of the United States Express Company; but it does not now, nor would it even then, purport to be a contract to which the United States Express Company is a contracting party.

When this case was before this court on the appeal of J. & A. Boskowitz, it was held that there is in this receipt, on its face, such an ambiguity that as a matter of law it could not be held that this exemption related to the Adams Express Company,—that whether it did or not must depend upon proof of the circumstances under which the contract was made. It does not follow that the receipt, on its face, is a contract with the United States Express Company. The proposition that the court had no warrant to declare, as a

matter of law, that this provision in the receipt was a contract in relation to the liability of the Adams Express Company, does not at all sustain the proposition that as a matter of law the contract does not relate to the liability of the Adams Express Company. The proofs tend strongly to show that by the phrase, "said United States Express Company," the parties meant the Adams Express Company. The United States Express Company had not been mentioned above, and the Adams Express Company had been mentioned. When, therefore, the phrase, "the said United States Express Company," was used, it needed explanation from the circumstances. Either the word "said" must be rejected, or the words "United States" must be taken as a misnomer, wherein the parties called the Adams Express Company by a wrong name. The law, in the absence of proof, does not determine this question either way. What is the true intent of the parties giving or receiving this receipt, must be determined by circumstances to be proved. It was therefore error to declare, as a matter of law, this to be a contract with the United States Express Company, as much, at least, as it was to declare that, as a matter of law, it was the contract of the Adams Express Company. It was held when this case was heretofore before this court, that whether this provision was or was not in fact a contract between appellant and appellees, depended upon matter *dehors* the writing. The matters depended upon proof. It was for the jury, and not for the court, to determine the truth as to matters outside of the writing.

By the fourth instruction the jury were told, in substance, that although the valuation clause in the receipt may have been known to plaintiffs, and though plaintiffs may have known that defendant intended it to apply to the Adams Express Company and to this transaction, and although plaintiffs may have accepted the receipt with all this knowledge, and without objection thereto, and although they had

agreed to pay a valuation charge on fine furs, and still omitted to state the valuation, all this would not be a fraud, and in the absence of fraud would constitute no defence. The terms of the instruction are at least calculated to convey that idea, and the instruction ought not to have been given.

It is not necessary to pass upon other alleged errors. For the errors indicated the judgment of the Appellate Court is reversed, and the cause remanded, that the judgment of the trial court may be reversed and the cause sent back for a new trial.

*Judgment reversed.*

Mr. JUSTICE SCOTT: I do not concur in this opinion.